**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **EBONE D. COAKLEY**, Plaintiff, v. **SERENITY PALLIATIVE AND HOSPICE CARE OF HILLENDALE, INC.**, et al., Defendants. | Civil Action No. 1:13-cv-3537-MHC-JSA |

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Serenity Palliative and Hospice Care of Hillendale, Inc., Serenity Palliative and Hospice Care of Northeast Georgia, Inc., Serenity Palliative and Hospice Care of Savannah, Inc., Serenity Palliative and Hospice Care of Valdosta Inc., and Providence Hospice, Inc., submit their Memorandum in support of their Motion for Summary Judgment, showing the Court as follows:

1. **SUMMARY OF FACTS**

Plaintiff Ebone Coakley alleges that Defendants terminated her because of her pregnancy and he announced intention to take maternity leave under the Family and Medical Leave Act. [Dkt. 1]. The undisputed facts establish that a legitimate, nondiscriminatory reason existed for her termination, namely because on May 27, 2011, Coakley was argumentative and disrespectful to her supervisor and then

intentionally failed to comply with her supervisor's express and unambiguous direction to report to the office immediately.  The undisputed facts further establish that Coakley had no connection with Defendants Serenity Palliative and Hospice Care of Savannah, Inc., Serenity Palliative and Hospice Care of Valdosta, Inc. and Providence Hospice, Inc. Those Defendants, as a matter of law, cannot be considered her employer under either Title VII or the Family and Medical Leave Act.  Defendants incorporate the facts enumerated in their Statement of Material Facts as to Which There is No Genuine Issue to Be Tried, and all exhibits attached thereto.

2.   ARGUMENT AND CITATIONS OF AUTHORITY

A.   **Summary Judgment is Appropriate**

Federal Rule of Civil Procedure 56 mandates entry of summary judgment, upon motion, against a party who fails to make a showing sufficient to establish an essential element of her case on which she bears the burden of proof at trial.[1] Summary judgment is appropriate where, viewing the evidence in the light most favorable to the non-moving party, there exists no genuine issue of material fact.[2]

"Sufficient" showing requires more than "merely colorable" evidence; it requires evidence that is "significantly probative."[3]  A mere scintilla of evidence in support of the nonmoving party's position is not sufficient to defeat a motion for

---

[1] *Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).*

[2] *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986).

summary judgment.[4] A plaintiff cannot defeat summary judgment by relying upon conclusory allegations of discrimination.[5]

On a motion for summary judgment, "a court is not obligated to take as true testimony that is not based upon personal knowledge."[6] The Eleventh Circuit "has consistently held that conclusory allegations [of discrimination] without specific supporting facts have no probative value."[7] This is especially true where a defendant "has offered . . . extensive evidence of legitimate, nondiscriminatory reasons for its actions."[8]

B.    **Plaintiff's Title VII Claim Should Be Dismissed**

   *(1) There is no evidence of discriminatory intent.*

A Title VII plaintiff may establish discrimination through direct or circumstantial evidence that is sufficient to create an inference of discrimination.[9]

> Direct evidence is evidence which itself proves the existence of discrimination and does not require inference or interpretation, as for example a frank admission from a manager that he refused to hire an applicant because he was African-American

---

[4] *Id.*

[5] *Hill v. Oil Dri Corp.*, 198 Fed. App'x 852, 858 (11th Cir. 2006) (citing *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997)).

[6] *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1249 (11th Cir. 2007).

[7] *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210 (11th Cir. 2000).

[8] *Ferron v. West*, 10 F. Supp. 2d 1363, 1371 (M.D. Ga. 1998) (citing *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 597 (11th Cir. 1987)).

[9] *See Hinson v. Clinch Cnty., Georgia Bd. of Ed.*, 231 F.3d 821, 827 (11th Cir. 2000).

or because she was female."[10] Such direct evidence is "encountered only infrequently, since [it] is composed of only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of some impermissible factor.[11]

Unambiguously offensive comments referring to a protected class are not direct evidence of discrimination unless the comments referred to the adverse employment action itself. Thus, in *Scott v. Suncoast Beverage Sales*, a decision-maker's prior statement, "we'll burn his black ass" did not constitute direct evidence of race discrimination, in part, "because it was not directly related to the subject of [the plaintiff's] termination."[12] Likewise, in *Tran v. The Boeing Co.,* there was no direct evidence of discrimination where a supervisor had referred to the plaintiff as a "stupid Asian" on the very day of the termination because the comment did not address and was not made in the context of the plaintiff's termination.[13]

---

[10] *Schweers v. Best Buy, Inc.*, 132 Fed. App'x 322, 324 (11th Cir. 2005) (unpublished) (citing *Cooper v. Southern Co.*, 390 F.3d 695, 724, n. 15 (11th Cir. 2004)).

[11] *Schweers*, 132 Fed. App'x at 324 (citation and quotations omitted); *see also Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999).

[12] 295 F.3d 1223, 1227 (11th Cir. 2002) (citing *Damon v. Fleming Supermarkets, Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999); *see also Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) (explaining that "remarks unrelated to the decision-making process itself are not direct evidence of discrimination").

[13] 190 Fed. App'x 929, 932 (11th Cir. 2006).

These decisions are consistent with the Supreme Court's admonition that Title VII is not "a general civility code for the American workplace."[14] In the same vein, the Eleventh Circuit has noted that Title VII "was never intended to protect employees from all unpleasant and rude conduct in the workplace. It is an anti-discrimination statute."[15]

In her deposition, Plaintiff could identify only two comments that she asserts were discriminatory.  In March 2011, Coakley informed her supervisor, Sandie Weathington, that she was pregnant and that she anticipated taking FMLA later that year. (Statement of Material Facts As To Which No Genuine Issue Exists To Be Tried (hereafter "SMF') ¶86)  Coakley testified that Weathington asked her whether she would be a stay-at-home mom after having the baby. Weathington also suggested that Weathington suggested she not gain too much weight during pregnancy.  (SMF ¶¶ 87. 88)  Finally, Coakley testified Weathington no longer had "chummy conversations" with her or asked her how things were going after she told Weathington of her pregnancy.  Seen in the light most favorable to Coakley's claim, neither Weathington's comments nor her lack of "chumminess" rise to the level of either direct or circumstantial evidence of discriminatory intent.

---

[14] *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80, 118 S. Ct. 998, 1002 (1998).

[15] *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1253 (11th Cir. 1999) (Edmonson, J., concurring).

In her deposition, Coakley also testified that Weathington's failure to qualify her patient referrals for admission is evidence of discriminatory intent. (SMF¶ 130) The undisputed evidence, however, shows that this characterization of the evidence is in error.

On or about July 6, 2010, the Hillendale/Northeast hospice Administrator, Sandie Weathington hired Coakley as a Social Worker.  (SMF ¶ 52) In August 2010, the Hillendale/Northeast hospice promoted her to a position as a Community Relations Marketer ("Marketer").  (SMF ¶¶ 53, 54) As a Marketer, Coakley's primary responsibility was to secure patient referrals for the Hillendale/Northeast hospice. (SMF ¶68)  The hospice Medical Director would then visit those patients to determine whether they qualified for hospice care under Medicare and other state and federal regulation. (SMF ¶ 51)

Medicare regulations, for example, require that an individual must be "terminally ill" to be admitted to hospice care. (SMF ¶ 45) They provide that an individual is "terminally ill" if the medical prognosis is that the individual's life expectancy is 6 months or less if the individual's illness runs its normal course. (SMF ¶ 46) They further provide that a hospice may admit a patient only on the recommendation of its Medical Director, in consultation with, or with input from, the patient's attending physician, if any. (SMF ¶ 48)

As a Marketer Coakley was required to meet a monthly quota of nine qualified patient admissions.  (SMF ¶¶ 73, 74) During her first several months as a Marketer,

Coakley met or exceeded these quotas.  (SMF ¶¶ 76, 77, 78, 79) Beginning in January 2011 her productivity dropped.  (SMF ¶ 81) As Winter turned to Spring, the number of qualified admissions she was generating on a monthly basis continued to fall.  (SMF ¶¶ 82, 83, 84)

On April 27, 2011, Weathington and Senior Vice President Gil Messick met with Coakley to discuss her job performance.  (SMF ¶ 94) During that meeting, Weathington and Messick issued to Coakley a 30-day Plan of Correction.  (SMF ¶ 94)

At her deposition, Coakley could only offer conjecture about admissions that were not deemed qualified.  (SMF ¶ 130)

Two conclusions are inescapable.  First: it was the Medical Director's responsibility, not Weathington's, to deem a patient qualified for hospice care. Second, Coakley began demonstrating an inability to meet her quota more than two months before she told Weathington she was pregnant.

### (2) *Defendants have Articulated Legitimate, Non-Discriminatory Reasons for Terminating Plaintiff's Employment.*

If a Title VII plaintiff shows a *prima facie* case of discrimination by a preponderance of the evidence, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action taken with respect to Plaintiff.[16] This burden is one of production, not persuasion.[17] If the employer

---

[16] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804, 93 S. Ct. 1817  (1973).

[17] *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000).

articulates such a reason, the plaintiff then has "an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant [*i.e.,* the employer] were not its true reasons, but were a pretext for discrimination."[18]

Assuming, *arguendo*, that Coakley has articulated a *prima facie* case discrimination in violation of Title VII or interference or retaliation in violation of the FMLA, Plaintiff's claims nonetheless should be dismissed because Defendants have articulated a legitimate, non-discriminatory reason for Plaintiff's discharge, and Plaintiff cannot show that Defendants' legitimate, non-discriminatory reason for terminating her employment was a mere pretext for pregnancy or sex discrimination, or for FMLA retaliation or interference.

Around midday on Friday, May 27, 2011, Coakley and Weathington participated in a telephone conversation about a patient referral that Coakley was seeking to secure. (SMF ¶ 98)  Coakley became upset when told that the Medical Director would be scheduled to visit with the patient on the following Tuesday (May 31, 2011) in order to determine whether the patient qualified for hospice admission. (SMF ¶¶ 99, 100)  Coakley became argumentative and disrespectful of Weathington during the conversation and she called Weathington a liar.  (SMF ¶ 101) Weathington then instructed Coakley to report to the office immediately to

---

[18] *Young v. UPS*, 2015 U.S. LEXIS 2121, 12–13, 135 S. Ct. 1338 (2015) (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U. S. 248, 253, 101 S. Ct. 1089 (1981)).

meet with her and Messick concerning that conversation. (SMF ¶ 102)  Coakley intentionally failed to report to the office as instructed. (SMF ¶¶ 103, 104, 105, 106)

During a daily 3:45 p.m. conference call of the Hillendale/Northeast hospice staff, Director of Nursing Connie Wells asked Coakley if she was going to report to the office to meet with Weathington and Messick. (SMF ¶¶ 107, 108, 109) Plaintiff's response was: "I don't know, I haven't decided yet".  (SMF ¶¶ 110, 111)

At 3:56 p.m., Weathington sent a text message to Coakley stating that her refusal to report to the office as directed was "grounds for immediate termination." (SMF ¶ 114) At 3:57 p.m., Coakley replied by text message that she was on her way. (SMF ¶ 115)

Weathington and Messick waited for Coakley until 5:15 p.m., fifteen minutes past the close of business.  (SMF ¶¶ 115, 116) Coakley did not report. (SMF ¶ 118) She neither called nor contacted Weathington or Messick. (SMF ¶ 118)

Messick authorized Weathington to terminate Plaintiff's employment because of her insubordination to Weathington during the telephone conversation and because of her failure to report to the office as directed. (SMF ¶ 120)

At approximately 6:50 p.m., Coakley called Weathington's home telephone number. (SMF ¶ 118) During that conversation, Weathington told Coakley that that she and Messick had waited until 5:15 p.m., that Coakley had four hours and fifteen minutes to report, and that Coakley had never called to say that she would

be late. (SMF ¶¶ 122, 123) Weathington told Coakley that if she felt that Weathington had lied to her or was being unfair, Coakley could speak with Mr. Messick on the following work day, Tuesday, May 30, 2011. (SMF ¶ 124) Coakley said that she would. (SMF ¶ 124)

In fact, Coakley did not take the opportunity to meet with Mr. Messick.  (SMF ¶ 126)  On May 30, 2011, at approximately 9:30 a.m., Coakley contacted Weathington by telephone at the office. (SMF ¶ 125) She asked if she had been fired on the previous Friday. (SMF ¶ 125) Weathington responded that she thought Coakley wanted to speak with Mr. Messick. (SMF ¶ 125) Coakley responded that she did not want to speak with Messick. (SMF ¶ 125) "I wasn't going to, you know, beg for my job back or anything like that," said Coakley.  (SMF ¶ 127)

Weathington then told Coakley that she had been terminated effective May 27, 2011 for insubordination during their May 27th telephone conversation and for failure to follow instructions to report to the office immediately.  (SMF ¶ 127)

This was a legitimate non-discriminatory reason to support Coakley's termination.

C.    **Plaintiff's FMLA claims fail as a matter of law.**

The Eleventh Circuit holds:

> In order to state a [prima facie] claim of [FMLA] retaliation, an employee must allege that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment decision; and (3) the decision was causally related to the

protected activity."19 "When circumstantial evidence is relied
upon [by a plaintiff in an FMLA retaliation case], the Eleventh
Circuit has directed courts to apply the traditional burden-
shifting framework for Title VII cases announced by the United
States Supreme Court in McDonnell Douglas . . . .20

Indisputably Plaintiff relies upon only circumstantial evidence to prove that her

pregnancy status was the reason for her termination.  That circumstantial evidence

consists of two passing comments Weathington made in March 2011, more than

two months prior to Coakley's termination. As demonstrated above, no evidence of

discriminatory intent exists.  Plaintiff was terminated for a legitimate non-

discriminatory reason. Plaintiff cannot satisfy her burden under the *McDonnell*

*Douglas* burden-shifting test. Thus, Plaintiff's FMLA retaliation claim fails, as a

matter of law.

In order to establish a claim of interference [under the FMLA],
the employee must only demonstrate beyond a preponderance
of the evidence, without regard to the intent of the employer,
that they were entitled to the benefit interfered with or
denied."21

---

[19] *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1207 (11th Cir. 2001)
(citing *Parris v. Miami Herald Publ'g Co.*, 216 F.3d 1298, 1301 (11th Cir. 2000)).

[20] *Sprinkle v. City of Douglas*, 621 F. Supp. 2d 1327, 1339 (S.D. Ga. 2008)
(citing *Graham v. State Farm Mutual Ins. Co.*, 193 F.3d 1274, 1283 (11th Cir.
1999)).

[21] *Darring v. DailyAccess Corp.*, 2006 U.S. Dist. LEXIS 17326, 21, 2006 WL
779868 (S.D. Ala. Mar. 27, 2006) (citing *Strickland v. Water Works and Sewer Bd.
Of City of Birmingham*, 239 F.3d 1199, 1206–07 (11th Cir. 2001); *O'Connor v.
PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1353 (11th Cir. 2000).

Since Ms. Coakley cannot show entitlement to an FMLA leave she never requested, her interference claim must also fail.

**D.     Defendants Savannah Hospice, Valdosta Hospice and Providence (SVP) are Bystanders and Have No Possible Liability to Coakley.**

Coakley brings three counts against all Defendants: Count 1, discriminatory termination on the basis of sex and pregnancy in violation of Title VII; Count II, interference with FMLA rights; and Count III, retaliation for asserting FMLA rights. (Dkt., 1, pp. 10-13).  Defendants Savannah hospice, Valdosta hospice and Providence (hereinafter "Defendants SVP") seek summary judgment as to all liability because the undisputed facts establish that Coakley was not an employee of either of these three entities and, alternately, these three entities never were Coakley's employers. Coakley was clearly employed by the Hillendale/Northeast hospice. (SMF, ¶¶ 14, 3) Thus, neither Northeast nor Hillendale seek summary judgment on the employer/employee issue.

The undisputed facts establish:

- Defendants were organized as separate corporations [Dkt. 1];
- While the Hillendale/ Northeast hospice operated out of Conyers and then Snellville, Providence operated out of a fifty mile radius from Stockbridge. To state the obvious, the Savannah hospice operated in a fifty mile radius including Savannah; and the Valdosta hospice operated in a fifty mile radius including Valdosta.(SMF ¶¶ 4-5; 6-8)

- Each hospice operated separately. [22]
- Each hospice maintained a separate State hospice license and separate Medicare license. (SMF ¶ 20-21)
- Each hospice employed a separate Administrator, a separate Director of Nursing, a separate clinical staff and a separate marketing staff.[23]
- Each hospice maintained a separate hospice license, a separate bank account, a separate employee group health insurance policy and a separate ADP payroll account. (SMF ¶ 24)

*(1) Coakley was never an employee of Defendants SVP and, thus, her Title VII claims against those entities must be dismissed.*

Title VII defines an "employee" as "an individual employed by an employer." [24]

Pre-1982 Fifth Circuit precedent established that "Only those plaintiffs who are 'employees' may bring a Title VII suit."[25] "Congress intended to limit the scope of the Act to specific employment relationships . . . . We can assume that Congress also meant to limit the pool of specific plaintiffs under Title VII; otherwise any person could sue an 'employer' . . . regardless of whether she had an actual employment relationship with that employer." [26]

---

22 *SMF ¶ 19.* Again, Defendants agree that Northeast and Hillendale operated out of one license.

23 *SMF, ¶ 22.* State regulations forbid an Administrator or Director of Nursing from being employed under more than one license. Id., ¶ 23.

24 *See* 42 U.S.C. § 2000e(f)

25 *LLampallas v. Min-Circuits, Inc.,* 163 F.3d 1236,1242 (1998)(*citing McClure v. Salvation Army,* 460 F.2d 553, 556 (5th Circ. 1972)).

26 *Id.,* 163 F.3d at 1243.

*Coakley was never an employee of Defendants SVP because she was never compensated by Defendants SVP.*

"We believe" that "only individuals who receive compensation from an employer can be deemed 'employees' under the statute. [27]  Quoting from the *O'Connor v. Davis,* the Eleventh Circuit stated, "Where no financial benefit is obtained by the purported employee from the employer, no plausible employment relationship of any sort can be said to exist because . . . compensation . . .  is an essential condition to the existence of an employer-employee relationship." [28]  As recently as last month—relying on the U.S. Supreme Court in *Walters v. Metro. Educ. Enters*[29]— the Eleventh Circuit dismissed a Title VII case noting "The Supreme Court has expressly authorized the payroll method as the primary means of determining the existence of an employment relationship"

   The undisputed facts establish:

- Coakley was never on the payroll of Defendants SVP. (SMF, ¶ 54)
- Coakley never received compensation from Defendants SVP. (SMF, ¶ 55)
- Coakley never worked in or from the offices of Defendants SVP. (SMF, ¶ 56)
- Coakley never performed any duties for Defendants SVP. (SMF, ¶ 57)

---

[27] *Id., 163 F.3d 1243* (citing *O'Conner v. Davis,* 126 F.3d 112, 115-116 (2nd Circ., 1997), *cert denied* 522 U.S. 1114, 118 S.Ct. 1048, 140 Led. 2d 112 (1998))

[28] *Id.* (ellipses in original).

[29] *Vazquez v. Melamed,* 2015 U.S. App. LEXIS 4888, 1 (11th Cir. Fla. Mar. 26, 2015) (*citing Walters v. Metro. Educ. Enters.,* 519 U.S. 202, 207, 117 S. Ct. 660, 664, 136 L. Ed. 2d 644, 652 (1997)).

The undisputed facts demand the conclusion that Coakley was not an employee of Defendants SVP and, therefore, Defendants SVP should be dismissed from this suit.

> *Coakley was never an employee of Defendants SVP because those Defendants never controlled her or her actions.*

Plaintiff may argue that the control test set out by the Supreme Court in *Clackamas Gastroenterology Assocs, P.C. v. Wells*,[30] is the more applicable test. In *Clackamas*, the Court was called upon to determine if shareholders-directors were employees of the defendant for purposes of the 15 employee jurisdictional threshold of the Americans with Disability Act. The Court first noted that the ADA defines an employee as "an individual employed by an employer", the identical language in Title VII. [31] The Court granted certiorari in *Clackamas* to resolve a conflict in the Circuits.  The Court's holding "was not confined to the particulars of the ADA" citing as examples two Title VII cases out of the Seventh and Eighth Circuits. [32]

The Court first noted that the definition of employee was merely "nominal," "completely circular", and resolves nothing."[33] "Silence" the Court wrote "often reflects an expectation that courts will look to the common law to fill gaps in statutory text, particularly when an undefined term has a settled meaning at

---

*30* 538 U.S. 440, 123 S.Ct. 1673, 155 L.Ed. 2d 615 (2003).
*31 Id.,* 528 U.S. at 443.
*32 Id.,* at note 3.
*33 Id.*

common law."[34] Finding the common law definition of the master-servant relationship to provide "helpful guidance," the Court noted that the Restatement (Second) of Agency defines servant as a person whose work is "controlled or is subject to the right to control by the master." [35] More specifically, the Court adopted six factors relevant to "whether a shareholder-director is an employee":

(1) Whether the organization could hire or fire the individual or set the rules and regulations of the individual's work.

(2) Whether and, if so, to what extent the organization supervised the individual's work.

(3) Whether the individual reported to someone higher in the organization.

(4)  Whether and, if so, to what extent the individual was able to influence the organization.

(5) Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts.

(6) Whether the individual shared in the profits, losses, and liabilities of the organization.[36]

If it applies, the C*lackamas* control test is no more availing to Plaintiff—at least as to Defendants SVP—than the payroll test set out by the Eleventh Circuit in *Llampallas*.  It is also unlikely the *Llampallas* payroll test has been completely superseded because the Eleventh Circuit has continued to apply the *Llampallas*

---

*34 Id.,* 538 U.S. at 447.

*35 Id.,* 538 U.S. at 448 (See Also, Section 220(l)("A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control."

*36 Id.,* 538 U.S. at 449.

payroll test even after *Clackamas* was decided.[37] This continued application may signal that the *Clackamas* test is limited to determining whether a shareholder-director is an employee within the meaning of Title VII. But even if the *Clackamas* control test is applied in this case, the undisputed facts demonstrate that Defendants SVP exercised no control over Coakley what-so-ever:

- Neither Providence, the Savannah hospice nor the Valdosta hospice ever supervised Coakley. (SMF, ¶¶ 28, 59)
- Neither Providence, the Savannah hospice nor the Valdosta hospice ever supervised or controlled Coakley's work schedules or working conditions. (SMF, ¶ 60)
- Neither Providence, the Savannah hospice nor the Valdosta hospice ever participated in the determination of Coakley's pay rate or method of payment. (SMF, ¶ 61)
- Neither Providence, the Savannah hospice nor the Valdosta hospice ever maintained employment records on Coakley. (SMF, ¶¶ 30, 62)
- Neither Providence, the Savannah hospice nor the Valdosta hospice ever hired or fired Coakley. (SMF, ¶¶ 27, 63)
- At no time did Coakley report to Providence, the Savannah hospice or the Valdosta hospice. (SMF, ¶ 64)
- Ms. Coakley was not responsible for securing patient referrals at Providence, the Savannah hospice or the Valdosta hospice. (SMF, ¶ 68)
- Ms. Coakley received no work assignments from Providence, the Savannah hospice or the Valdosta hospice. (SMF, ¶¶ 29, 69)
- Ms. Coakley was not subject to supervision by Providence, the Savannah hospice or the Valdosta hospice. (SMF, ¶ 70)

_____

37 *See Vazquez v. Melamed,* 2015 U.S. App. LEXIS 4888, 1 (11th Cir. Fla. Mar. 26, 2015).

The undisputed facts, therefore, support summary judgment in favor of Defendants SVP regardless of what variant of the test applies.

### (2) *Defendants SVP were never Coakley's Employer and, thus, her Title VII claims against those entities must be dismissed.*

Beyond the fact that Coakley was not an employee of Defendants SVP because she was never compensated or controlled by those Defendants, Defendants SVP do not meet the Title VII definition of employers. Employers are defined by Title VII as "a person engaged in an industry affecting commerce who has fifteen or more employees . . ."[38]  Several judicial theories expand the definition of employer under Title VII including a "single employer" theory and a "joint employer" theory.[39]  In *Llampallas*, the Eleventh Circuit addressed a similar factual situation to this matter. The Court summarized the single employer and joint employer theory: "Both theories concentrate on the degree of control an entity has over the adverse employment decision on which the Title VII suit is based."[40] Describing, as here, the decision to terminate the Plaintiff as the adverse employment decision, the court reversed the trial court and dismissed the party that "had absolutely nothing to do with that decision. [The dismissed defendant] had no interaction with the

---

[38] 42 U.S.C. § 2000e(b).

[39] *Llampallas v. Min-Circuits, Inc.,* 163 F.3d at 1243)*(citing Radio and Television Broadcast Technicians, Local 1264 vs. Broadcast Service of Mobile, Inc.,* 380 US 225, 85 S.Ct. 876, 13 L.Ed. 2d 789 (1965)("single employer") *; Virgo v. Riviera Beach Assocs., Ltd.,* 30 F.3d 1350, 1359-61 (11th Cir. 1994)("joint employer")

[40] *Id.,* 163 F.3d at 1244-45.

[employer]. It made no decisions that affected the terms and conditions of employment at [the employer]. In fact, [the dismissed defendant] was completely uninvolved in the operation of [the employer]." [41]

As exhaustively set out above, Defendants SVP also had nothing to do with the decision to terminate Coakley. Defendants SVP had no interaction with Coakley and made no interaction with her whatsoever. They were "completely uninvolved" in the operation of Northeast/Hillendale. Defendants SVP are, therefore, not employers of Coakley under Title VII and should be dismissed.

Plaintiff may argue, as they did in their Complaint, that that Defendants have "common owners, officers and employees, share offices and are engaged in the same or related business" and "as such Defendants are a joint employer or integrated enterprise."[42]  Defendants do not contest that Northeast and Hillendale may be an employer under this test. Defendants do not contest that a management company or holding company of Northeast/Hillendale might also qualify as a joint or integrated employer. Plaintiff, however, has not brought suit against a holding company or a management company. Plaintiff has brought suit against Defendants SVP who are, at most, sister corporations on an organizational chart. Defendants SVP had no control or input, whatsoever, with the decision to terminate Coakley and thus, as *Llampallas* instructs, must be dismissed as mere bystanders.

---

[41] *Id.,* 163 F.3d at 1245.
[42] *Complaint,* Dkt.1, ¶ 12.

**(3)** ***Coakley was never an employee of Defendants SVP and, thus, her FMLA claims against those entities must be dismissed.***

The FMLA provides that the terms "employ" and "employee" have the same meanings ascribed to them in Section 203 of the Fair Labor Standards Act. [43] In an Eleventh Circuit case decided last week, that court once again confirmed that in FLSA cases reviewing the employee question, the "economic realities" "This test analyzes the extent to which the individual is dependent on the employer."[44] The Court in *Scantland v. Jeffry Knight, Inc*., [45] set out a series of six factors but held:

> It is dependence that indicates employee status. Each test must be applied with that ultimate notion in mind. More importantly, the final and determinative question must be whether the total of the testing establishes the personnel are so dependent upon the business with which they are connected that they come within the protection of FLSA or are sufficiently independent to lie outside its ambit.[46]

---

[43] 29 USC Sect. 2611 (3). In the relevant context of non-public agency employment, Section 203 (e) of the FLSA defines employee as "any individual employed by an employer."

[44] *Ashkenazi v. S. Broward Hosp. Dist*., 2015 U.S. App. LEXIS 6717, 6 (11th Cir. Fla. Apr. 23, 2015)(*citing Donovan v. New Floridian Hotel, Inc.,* 676 F.2d 468, 470-71 (11th Cir. 1982)).

[45] 721 F.3d 1308, 1311 (11th Cir. 2013).

[46] *Id,* 721 F.3d at 1312. The Court set out a six factor test: (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; (4)whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; (6) the extent to which the service rendered is an integral part of the alleged employer's business. Id.

The undisputed facts demonstrate that Coakley had no economic dependence on Defendants SVP. She did no work for those entities and those entities did not compensate her.  It is logically impossible to conclude that Coakley was economically dependent on Defendants SVP. Thus, Coakley was not an "employee" within the meaning of the FMLA. [47]

### (4) *Defendants SVP were never Coakley's employer and, thus, her FMLA claims against those entities must be dismissed.*

Coakley may not proceed against Defendants SVP if they are not her employers under the FMLA. [48]

> The FMLA defines "employer" as follows:
>
> (i)  means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;

---

As the Court is aware, these factors typically bear on the existence of an independent contractor status under the FLSA. They are of limited assistance in this context because Defendants Northeast and Hillendale do not contest that Coakley was economically dependent on those entities. It is difficult to even begin to apply the tests as to Defendants SVP because Coakley did **nothing** for them.

[47] The Eleventh Circuit has also applied a hybrid economic approach combined with common law agency in determining status as an "employee". See *Cobb vs. Sun Papers, Inc*., 673 F.2d 337, 340-41 (11th Circ. 1982); See *Ashkenazi v. S. Broward Hosp. Dist.,* 2015 U.S. App. LEXIS 6717, 7 (11th Cir. Fla. Apr. 23, 2015). Because Coakley can demonstrate neither economic dependence nor a common law agency relationship as to Defendants SVP, this alternate variation is similarly unavailing to Coakley.

[48] *Douglas v. E.G. Baldwin & Assocs.,* 150 F.3d 604, 607 (6th Cir. 1998). The Court in Douglas found that suit against an FMLA "employer" was necessary or the Court did not have subject matter jurisdiction.

(ii)  includes--

(I)  any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and

(II)  any successor in interest of an employer.[49]

In *Morrison v. Magic Carpet Aviation*, [50] the Eleventh Circuit held in deciding, "whether an entity is an individual's employer, we consider: (1) whether or not the employment took place on the premises of the alleged employer; (2) how much control the alleged employer exerted on the employees; and (3) whether or not the alleged employer had the power to fire, hire, or modify the employment condition of the employees."  Here, Coakley performed no services at their locations; Defendants SVP exercised no control over Coakley; and had no power to fire, hire or modify Coakley's employment. Even if Defendants SVP shared some common ownership with Northeast or Hillendale, this fact makes no difference "As a matter of law, we do not believe the common ownership of two corporations is enough for a jury to conclude that they were integrated into one operation for FMLA purposes." [51] Similarly, this court should grant summary judgment as to Defendants SVP because they were not Coakley's employer.

*(5) Coakley's claims against Defendants SVP should be dismissed*

Defendants SVP have nothing to do with Coakley's suit against Northeast and Hillendale. These Defendants exercised no control over Coakley and Coakley

---

[49] 29 U.S.C. § 2611 (4).
[50] 383 F.3d 1253 (11th Cir.. 2004)
[51] 383 F.3d at 1257.

performed no work for them. These simple—and undisputed—facts support the legal conclusions that Coakley is not an employee of Defendants SVP and Defendants SVP are not Coakley's employers. Summary judgment is, therefore, demanded.

3.  **CONCLUSION**

Coakley failed to make her quota before announcing she was pregnant. She continued to miss her quota after her announcement. She called her supervisor a liar and refused to return to the office to discuss the matter. Northeast and Hillendale had every right to terminate her for those actions and, thus, are not liable for Coakley's claims under Title VII and the FMLA.

Coakley had nothing to do with Defendants SVP and Defendants SVP had nothing to do with Coakley. Summary judgment in favor of these three bystanders is also proper.

Defendants respectfully request that this Court grant summary judgment as to all Plaintiff's claims and enter an order dismissing this action in its entirety.

Respectfully submitted,

**DELONG CALDWELL
BRIDGERS & FITZPATRICK, LLC**

3100 Centennial Tower          */s/ Kevin D. Fitzpatrick, Jr.*
101 Marietta Street             Kevin D. Fitzpatrick, Jr.

Atlanta, GA 30303                          Georgia Bar No. 262375
(404) 979-3150
(404) 979-3170 (facsimile)                 */s/ Charles R. Bridgers*
charlesbridgers@dcbflegal.com              Charles R. Bridgers
kevin.fitzpatrick@dcbflegal.com            Georgia Bar No. 080791

                                           Counsel for Defendants